UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANDRE PAUL PINNOCK PERRY,
aka ANDRE PINNOCK, aka ANDRE
PAUL PINNOCK,[1]

                                        Petitioner,

-vs-                                                                    DECISION and ORDER

                                                                              19-CV-6332 CJS

JEFFREY SEARLS, Field Office Director
Buffalo Federal Detention Facility ("BFDF"),[2]

                                        Respondent.

_____

INTRODUCTION

Andre Paul Pinnock Perry ("Petitioner") (A-208-910-422), proceeding *pro se*,

commenced this habeas proceeding pursuant to 28 U.S.C. § 2241 ("Section 2241")

_____

[1] Petitioner has used, and/or been referred to by, these names interchangeably.   For example, the New York State Department of Corrections and Community Supervision ("DOCCS") refers to Petitioner as Andre Pinnock, DIN # 17R1264.

[2] *See, Gutierrez v. Barr*, No. 20-CV-6078-FPG, 2020 WL 2059845, at *3 (W.D.N.Y. Apr. 29, 2020) ("[T]he only proper respondent is Jeffrey Searls, Officer in Charge at the Buffalo Federal Detention Facility. See ECF No. 5 at 20. As the "person with direct control" over Petitioner's detention, id., he is the proper respondent given Petitioner's requested relief. *See Hassoun v. Sessions*, No. 18-CV-586, 2019 WL 78984, at *7 (W.D.N.Y. Jan. 2, 2019) ("The majority view in the Second Circuit requires the immediate custodian, generally the prison warden, to be named as a respondent in core immigration habeas proceedings—i.e., those challenging present physical confinement." (quotation omitted)).").

1

against Respondent ("Respondent" or "the Government"), challenging his continued

detention in the custody of the United States Department of Homeland Security ("DHS"),

Immigration and Customs Enforcement ("ICE") pending the completion of removal

proceedings against him.   For the reasons discussed below, the Court will delay

issuing a decision on the Petition until it has received supplemental submissions.

BACKGROUND

Unless otherwise noted, the facts as set forth below are taken from the petition

and administrative record in this action.

Petitioner is a native and citizen of Jamaica.   On July 28, 1990, Petitioner

entered the United States pursuant to a six-month B2 visitor visa.[3]   Petitioner

overstayed his visa and has remained in the United States illegally since that time.[4]

On January 17, 2006, Petitioner was arrested by the New York City Police and

charged with Robbery in the First Degree, in violation of New York Penal Law ("PL") §

160.15 and Criminal Possession of a Weapon in the Second Degree in violation of PL §

265.03.   The Pre-Sentence Investigation Report ("PSR") indicated that Petitioner and

an accomplice had robbed a livery cab driver while holding a gun to the driver's head.[5]

---

[3]  ECF No. 4-1 at p. 13.

[4]  Petitioner indicates that while he considers himself an American, he has "come to understand that" he is "in the United States illegally." Certified Record of Proceedings, *Pinnock v. Barr*, Circuit Court Case No. 18-3797 (2d Cir.), Docket No. 30.

[5]  ECF No. 4-2 at p. 22.

Petitioner pled guilty in New York State Supreme Court, Bronx County, to Robbery in the Third Degree (New York Penal Law ("PL") § 160.05) in satisfaction of the charges. For his plea, Petitioner received a sentence of five years' probation.   However, Petitioner never reported to Probation, and the Court issued a bench warrant for his arrest.[6]

On August 4, 2015, Petitioner was arrested by the New York City Police and charged with Assault in the Second Degree in violation of PL § 120.05 and Menacing in the Second Degree in violation of PL § 120.14.   The record does not indicate a disposition of that charge.

On or about November 10, 2016, Petitioner was arrested by New York City Police and charged with Criminal Possession of a Weapon in the Second Degree in violation of PL § 265.03; Criminal Possession of a Firearm in violation of PL § 265.01-b(1); and Unlawful Possession of Marijuana in violation of Penal Law § 221.05.[7]   A Grand Jury subsequently returned a three-count indictment accusing Petitioner of those same offenses.[8]   The PSR indicated that Petitioner had been arrested with a loaded .32 caliber pistol in his waistband, extra ammunition in his sock, and a small quantity of marijuana.   On or about May 2, 2017, Petitioner pled guilty in New York State Supreme Court, Bronx County, to Criminal Possession of a Firearm ( PL § 265.01-b) in

---

[6] ECF No. 4-2 at pp. 24, 26.

[7] ECF No. 4-1 at p. 14.

[8] ECF No. 4-1 at pp. 16–17.

satisfaction of the charges.[9]   Petitioner was sentenced as a Second Felony Offender to an indeterminate sentence of eighteen months-to-three years.[10]   At that same time, Petitioner was sentenced for his violation of probation (in connection with the earlier Robbery 3rd conviction) to an indeterminate term of one-to-three years, with the sentence to run concurrent with the sentence imposed for the conviction for Criminal Possession of a Firearm.[11]

Petitioner subsequently began serving his prison sentence in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").

On June 26, 2017, the Department of Homeland Security ("DHS") commenced administrative removal proceedings against Petitioner based on INA § 237(a)(1)(B) ("nonimmigrant overstay"), INA § 237(a)(2)(C) ("firearms conviction"), INA § 237(a)(2)(A)(iii) ("aggravated felony") and INA § 237(a)(2)(A)(iii) ("theft or burglary offense with minimum one year imprisonment").[12]

---

[9]  The PSR quotes Petitioner as stating that he pled guilty to the crime because he had been caught "red handed." ECF No. 4-2 at p. 29.

[10]  ECF No. 4-1 at p. 26.

[11]  ECF No. 4-1 at p. 25; ECF No. 4-2 at pp. 19–20, 26, 29.

[12]  ECF No. 4-1 at p. 19.

In this regard, DHS elected to proceed by way of expedited removal order pursuant to INA § 238(b), 8 U.S.C. § 1228(b), entitled "Expedited removal of aliens convicted of committing aggravated felonies." This expedited removal process for aliens convicted of aggravated felonies does not require that an Immigration Judge ("IJ") issue the removal order. *See, generally, Osuna-Gutierrez v. Johnson*, 838 F.3d 1030, 1033–34 (10th Cir. 2016) ("Congress gave power to the AG to create an expedited removal program, which the AG created within INS, and Congress later transferred that power to DHS. Therefore, DHS properly has authority to initiate expedited removal proceedings for aggravated felons . . . .   Nothing in § 1228 requires that an IJ preside over the expedited removal process.").

Regarding Petitioner's felony convictions, he did not file a timely notice of appeal. However, on May 15, 2018, the New York State Supreme Court, Appellate Division First Department, granted Petitioner leave to file a late direct appeal.[13]

On May 25, 2018, DOCCS transferred custody of Petitioner to DHS.    At that time, DHS indicated that Petitioner would be detained pending the completion of his removal proceedings.[14]

---

[13]  ECF No. 4-1 at p. 33.

[14]  ECF No. 4-1 at p 28.

On June 15, 2018, DHS issued a Final Administrative Removal Order finding that Petitioner was deportable under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien having been convicted of aggravated felonies as defined in 8 U.S.C. § 1101(a)(43)(F) & (G).[15]   The removal order was issued by a DHS official pursuant to the expedited removal procedures contained in INA § 238(b) for aliens convicted of committing aggravated felonies.[16]

When Petitioner was initially interviewed by DHS officials in 2017, he had not expressed any fear of returning to Jamaica.   Rather, Petitioner had indicated only that he had been young (seven years of age) when he came to the United States.[17] However, Petitioner subsequently alleged a fear of "persecution or torture" that an asylum officer found credible.[18]   Because of that, on or about August 8, 2018, pursuant to 8 CFR § 208.31(e) DHS referred the matter to an Immigration Judge ("IJ") for a determination of withholding of removal.[19]   That is, DHS placed Petitioner in

---

[15]  ECF No. 4-1 at p. 37.

[16]  ECF No. 4-1 at p. 36.

[17]  ECF No. 4-1 at p. 21 ("Pinnock claims no credible fear of returning to Jamaica, citing only that he left when was young.").

[18]  ECF No. 4-1 at pp. 38, 43.

[19]  ECF No. 4-1 at p. 38; *see also, generally*, Withholding of removal, 2 Immigration Law Service 2d § 10:231 ("While the granting of asylum is discretionary, withholding of removal to a particular country is mandatory if the government determines that the applicant's life or freedom would be threatened in that country. . . .   A grant of withholding of removal does not give the applicant an automatic right to remain in the United States nor does it give him or her the right to apply for lawful permanent resident status, obtain many federal benefits and assistance, or bring his or her family to the United States. Further, a

"withholding only" proceedings,[20]  pursuant to INA § 241(b)(3)(B) and 8 C.F.R. § 208.16, to determine whether, despite the fact that he was removable, removal to Jamaica should be withheld.[21]

On August 10, 2018, a DHS official indicated that Petitioner should continue to be detained pending a final administrative determination in his case.[22]   In that regard, although DHS had issued a removal order, the order was not "final," due to the pendency of the "withholding only" proceeding, and Petitioner therefore remained detained pursuant to 8 U.S.C. § 1226, not 8 U.S.C. § 1231. *See, Guerra v. Shanahan*, 831 F.3d 59, 64 (2d Cir. 2016) ("Guerra's removal order is not final during the pendency of his withholding-only proceedings . . . . Accordingly, the language and structure of the statutes dictate the conclusion that Guerra's detention during the pendency of his withholding-only proceedings is detention pursuant to 8 U.S.C. § 1226(a).").[23]

---

noncitizen who is granted withholding of removal may be removed to a third country in which he or she would not face persecution if the United States is able to identify such a country willing to accept him or her.").

[20] ECF No. 4-1 at p. 43.

[21] *See, I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 419, 119 S. Ct. 1439, 1443, 143 L. Ed. 2d 590 (1999 ("Under the immigration laws, withholding is distinct from asylum, although the two forms of relief serve similar purposes. Whereas withholding only bars deporting an alien to a particular country or countries, a grant of asylum permits an alien to remain in the United States and to apply for permanent residency after one year.").

[22] ECF No. 4-1 at p. 40.

[23] *See also, generally, Vargas v. Wolf*, No. 219CV02135KJDDJA, 2020 WL 1929842 at *3 (D. Nev. Apr. 21, 2020) ("The INA provides a "complex statutory framework of detention authority," codified at 8 U.S.C. §§

On August 30, 2018, DHS served on Petitioner a "Notice to Alien of File Custody Review."[24]  The notice indicated that DHS would conduct a file review of Petitioner's custody on September 27, 2018.   The notice further indicated that in order to obtain release on an Order of Supervision, Petitioner would need to demonstrate by clear and convincing documentary evidence that he was neither dangerous nor a flight risk.[25]

On October 17, 2018, DHS issued a "Decision to Continue Detention."[26]   The decision indicated that DHS had reviewed the circumstances of Petitioner's case and had determined that he should remain detained.   In that regard, DHS indicated that Petitioner's criminal record indicated that he had a "wanton disregard for the laws of the United States."[27]   Additionally, the decision observed that Petitioner had provided DHS with only minimal information about any community ties.   DHS concluded that

---

1226 and 1231. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). Where a non-citizen falls within the statutory scheme "can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Id.* In general, § 1226(a) governs detention during the pendency of a non-citizen's removal proceedings, and § 1231 governs detention following the issuance of a final removal order. DHS has discretionary authority under § 1226(a) to determine whether a non-citizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the non-citizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory.") (footnote omitted).

[24]  ECF No. 4-1 at p. 41.

[25]  ECF No. 4-1 at p. 41.

[26]  ECF No. 4-1 at pp. 42–43.

[27]  ECF No. 4-1 at p. 43.

Petitioner was both a danger to the community and a flight risk.[28]

On or about November 1, 2018, Petitioner made a motion for a change of venue from Batavia, New York, to New York City.[29]   On November 1, 2018, the IJ denied the application for change of venue.[30]   On November 5, 2018, Petitioner filed an "interlocutory appeal" to the Board of Immigration Appeals ("BIA") relating to the "withholding only" proceeding.[31]

On November 7, 2018, DHS issued another "Decision to Continue Detention," again finding that Petitioner's detention should continue pending the completion of his "withholding only" proceeding, since he posed a danger to the community and a risk of flight.[32]   The decision further noted that Petitioner was scheduled to appear before an IJ on 13, 2018 for a "withholding only" proceeding, and that he was scheduled to receive another custody review on December 26, 2018.

On November 27, 2018, DHS denied Petitioner's request to re-open the Final Administrative Removal Order.

On December 7, 2018, BIA denied the interlocutory appeal of the IJ's denial of Petitioner's motion for change of venue.[33]   In that decision, BIA observed that

---

[28] ECF No. 4-1 at p. 43.

[29] ECF No. 4-2 at p. 6.

[30] ECF No. 4-2 at p. 6.

[31] ECF No. 4-1 at p. 51.

[32] ECF No. 4-1 at pp 48–49.

[33] ECF No. 4-2 at p. 6.

Petitioner "apparently d[id] not dispute his removability,"[34] though he was requesting withholding of removal to Jamaica.   Additionally, BIA indicated that to the extent Petitioner was challenging his underlying criminal convictions, such challenge was "speculative."[35]

On December 13, 2018, DHS notified Petitioner of its intent to conduct a further custody review on December 20, 2018.[36]   Petitioner requested that the review be conducted by in-person interview, with his attorney present.[37]   In connection with that custody review, Petitioner completed a written questionnaire[38] in which he attempted to demonstrate his ties to the community in the United States by listing his employer and various family and friends.   Regarding his criminal convictions, Petitioner asserted that he was currently released on parole by the State of New York.   Additionally, Petitioner stated: "I was convicted of Robbery 3rd, but did not commit the crime.   Because of this I was convicted of Criminal Possession of a Firearm."[39] Petitioner also admitted that he had previously failed to appear for proceedings in connection with his state criminal charges, but blamed it on that fact that he had needed to care for his "ailing fiancé."[40]

---

[34] ECF No. 4-2 at p. 6.

[35] ECF No. 4-2 at p. 6.

[36] Docket No. 4-2 at pp. 8–9.

[37] ECF No. 4-2 at p. 9.

[38] ECF No. 4-2 at pp. 10–15.

[39] ECF No. 4-2 at p. 11.   This statement by Petitioner, in addition to being nonsensical, is contradicted by the record as discussed further below.

[40] ECF No. 4-2 at p. 12.

On December 21, 2018, Petitioner filed a petition for review with the United States Court of Appeals for the Second Circuit, challenging DHS's decision not to re-open the Final Administrative Removal Order.

On January 14, 2019, an IJ conducted a bond hearing.[41]    In connection with that hearing DHS filed various evidence purporting to show that Petitioner should remain detained.[42]    Such evidence included the state-court judgments and commitment orders evidencing Petitioner's convictions for Robbery in the Third Degree and Criminal Possession of a Firearm.    DHS also submitted the PSRs relating to those convictions. In that regard, the PSR relating to the robbery conviction stated, as noted earlier, that Petitioner had originally been sentenced to probation upon his conviction after pleading guilty, but that he never reported to probation, resulting in the issuance of a bench warrant,[43]  and that subsequently Petitioner had "remained at large for approximately seven years."[44]    Additionally, the PSR had "strongly" recommended that Petitioner be incarcerated for his crimes.[45]

---

[41]  ECF No. 4-2 at p. 33.

[42]  ECF No. 4-2 at pp. 16–31.

[43]  ECF No. 4-2 at p. 24.

[44]  ECF No. 4-2 at p. 26.

[45]  ECF No. 4-2 at p. 26.

On January 18, 2019, the IJ issued a Custody Decision and Order denying Petitioner's request for release on bond.[46]   As a preliminary matter, the IJ rejected the argument by DHS that Petitioner was subject to mandatory detention as a criminal alien under INA § 236(c).   Instead, the IJ found that Petitioner was detained pursuant to 236(a) and was therefore at least eligible to be released on bond.   On this point, the IJ referenced the Second Circuit decision *Guerra v. Shanahan*, 831 F.3d 59 (2d Cir. 2016) and stated:

> On December 28, 2018, [Petitioner] filed a motion for a custody redetermination hearing or alternatively, a '*Joseph*-style' hearing pursuant to *Matter of Joseph*, 22 I&N Dec. 799 (BIA 1999).   The Court concludes that [the hearing] should be deemed a *Guerra* hearing.[47]
>
> ***
>
> [Petitioner] argued that because his underlying convictions are now on direct appeal, they are no longer final for immigration purposes. Therefore, he concluded that he is not subject to INA § 236(c) mandatory custody, but rather INA § 236(a) custody.   The DHS argued that [Petitioner] was subject to mandatory custody under INA § 236(c).   In the alternative, the DHS argued that if the custody hearing was held according to *Guerra v. Shanahan*, 831 F.3d 59 (2d Cir. 2016), and [Petitioner] was therefore subject to INA § 23.6(a) custody, he would still be a danger in the community.   The Court agrees with the latter DHS argument.

ECF No. 4-2 at pp. 33–34, notes 1 & 2.[48]   As indicated, though, the IJ agreed with DHS

---

[46]   ECF No. 4-2 at pp. 33–35.

[47]   In referring to a "*Guerra* hearing," it is unclear to the Court whether the IJ was referring to *Guerra v. Shanahan* or to *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006). *See*, Respondent's Memo of Law, ECF No. 5 at pp. 12, 13 n. 4.

[48]   Respondent contends that in this regard the IJ "concluded that [Petitioner] was not subject to

that bond should be denied since Petitioner posed a danger to the community.   In that regard, the IJ noted that pursuant to 8 C.F.R. § 1236.1(c)(8), Petitioner had the burden to prove that he was neither a flight risk nor a danger to the community.[49]  The IJ found, based on Petitioner's criminal history, that Petitioner posed a danger to the community.[50]

On April 2, 2019, DHS notified Petitioner that it had conducted a further custody review and had decided to keep him detained.   With respect to this decision, the notice again referred to Petitioner's criminal history and to the fact that a final order of removal had been issued on June 29, 2018.   The notice stated that due to Petitioner's "claim of fear of returning to Jamaica," "ICE [had been] unable to move forward with [his] removal," but that a hearing was scheduled for April 4, 2019.[51]

---

mandatory detention under 8 U.S.C. § 1226(c) because his conviction is now on direct appeal." ECF No. 4 at p. 6.   The Court assumes that Respondent is correct as to the IJ's thought process, even though the IJ actually never explained the basis for his finding. *See, Matter of Acosta*, 27 I. & N. Dec. 420, 432 (BIA 2018) ("[A] conviction does not attain a sufficient degree of finality for immigration purposes until the right to direct appellate review on the merits of the conviction has been exhausted or waived.").

[49]  *See,* Answer and Return, ECF No 4 at p. 6 (Acknowledging that the IJ put the burden on Petitioner, "pursuant to the regulations.").

[50]  ECF No. 4-2 at p. 35.

[51]  ECF No. 4-2 at p. 36.

On April 12, 2019, an IJ dismissed the "withholding only" proceedings, "based on the government's failure to establish a 'final' conviction for immigration purposes."[52]   In the alternative, the IJ denied Petitioner's request for withholding of removal.[53]   In response to this ruling, DHS elected to cancel the administrative removal order (that had been issued under INA § 238(b), 8 U.S.C. § 1228(b)) and to pursue a new removal order under INA § 240, 8 U.S.C. § 1229a.[54]

On April 15, 2019, DHS issued a further Notice of Custody Determination, indicating that Petitioner's detention would be continued.[55]

On April 16, 2019, following the IJ's dismissal of the withholding proceeding due to DHS's failure to establish that Petitioner's criminal convictions were final, DHS filed a new Notice to Appear ("NTA"), charging Petitioner with being removable under INA § 240 based solely on INA § 237(a)(1)(B) (nonimmigrant overstay).

The following day, April 17, 2019, DHS filed another notice to appear, this time charging Petitioner with being removable under Section 240 based on three grounds: 1) INA § 237(a)(1)(B) (nonimmigrant overstay); 2) INA § 237(a)(2)(A)(iii) (aggravated felony – crime of violence); and 3) INA § 237(a)(2)(A)(iii) (aggravated felony -theft or

---

[52] ECF No. 4-2 at p. 40.

[53] ECF No. 4-2 at p. 40.

[54] ECF No. 4 at p. 8.

[55] ECF No. 4-2 at p. 41.

burglary offense with minimum one year imprisonment).[56]   This notice to appear was apparently intended to supersede the notice to appear filed the day before.

On May 3, 2019, Petitioner commenced this action by filing the subject § 2241 habeas petition, proceeding *pro se*.   Petitioner drafted the Petition using a fill-in-the-blank form that contains many pages of boilerplate legal argument. The gist of this legal argument is that aliens detained pending removal proceedings are entitled to individualized bond hearings (to determine whether they pose a danger to the community or a risk of flight) whenever detention exceeds six months; or, when the alien has "a substantial defense to removal";[57]  or when the detention has become "unreasonably prolonged."[58]   The Petition further contends that at any such bond hearing, the Government must bear the burden of proof, by clear and convincing evidence, to show that the alien is either dangerous or likely to flee, and to show that less-restrictive alternatives to detention are inadequate to achieve the Government's objectives.[59]   As for factual allegations, the Petition alleges that Petitioner has been in

---

[56]  ECF No. 1 at pp. 21–23.

[57]  The Court expresses no opinion as to whether Petitioner is correct on this point, but notes that, regardless, he has not made any showing that he has a "substantial defense" to removal.   Rather, he merely states, in his Reply, that he has an unspecified claim for cancellation of removal that is "viable and non-frivolous." ECF No. 6 at p. 12.

[58]  Petition, ECF No. 1 at pp. 4, 6–7.

[59]  *See*, Petition (ECF No. 1 at pp. 6,9) ("[T]he Supreme Court has recognized only two valid purposes for civil detention – to mitigate the risks of danger to the community and to prevent flight.  . . .   Detention is not reasonably related to th[ese] purpose[s] if there are alternative conditions of release that could

DHS custody since May 25, 2018, without a custody hearing, which, the Petition maintains, violates Petitioner's rights under the Due Process Clause of the Fifth Amendment, and the Excessive Bail Clause of the Eighth Amendment, to the U.S. Constitution. The Petition asserts that during the period of Petitioner's detention by DHS, no "immigration judge has conducted a hearing to determine whether lengthy incarceration is warranted based on danger or flight."[60]   Although, as detailed above, an Immigration Judge did, in fact, conduct such a hearing in January, 2019. Nevertheless, the Petition further maintains that the Government cannot continue to detain Petitioner unless it demonstrates by clear and convincing evidence that he poses a danger to society or a risk of flight.   The Petition also asserts that Petitioner is innocent of the crimes for which he was convicted, despite the fact its bald statements in that regard are contradicted by the record as set forth above.[61]

---

mitigate [danger to the community and] risk of flight.") (citations omitted).

[60]  ECF No. 1 at p. 1.

[61]  As discussed earlier, state court records indicate that in 2006 Petitioner pled guilty to Robbery in the Third Degree in satisfaction of several other charges and was sentenced to five year's probation. However, Petitioner never reported to probation and bench warrant was issued for his arrest, though he was not arrested on that warrant until seven years later.   State Court records further show that in 2016 Petitioner pled guilty Criminal Possession of a Firearm in satisfaction of several charges, and was sentenced to one-to-three years in prison, and at that same time was re-sentenced for his Robbery conviction and violation of probation.   The PSRs related to those convictions indicate that Plaintiff admitted to actually committing the crimes to which he pled guilty, and, indeed, with regard to the latter conviction, admitted that he was caught "red handed." ECF No. -2 at p. 29.   However, in his argument to the IJ in support of his request for a bond hearing, Petitioner asserted that he was unaware that he had

On May 30, 2019, Petitioner and the Government stipulated to withdraw the Petition for Review filed with the Second Circuit, since DHS had already cancelled the administrative removal order entered under INA § 238(b).

On June 24, 2019, DHS served Petitioner with yet another NTA,[62] again alleging that he is subject to removal on three grounds: 1) INA § 237(a)(1)(B) (nonimmigrant overstay); 2) INA § 237(a)(2)(A)(iii) (aggravated felony – crime of violence); and 3) INA § 237(a)(2)(A)(iii) (aggravated felony -theft or burglary offense with minimum one year imprisonment).[63] At the same time, DHS determined that it would continue detaining Petitioner pending a final administrative determination.[64]

---

been convicted of Robbery, stating, "In 2006 I missed a date after being released by a grand jury, because I had to care for my ailing fiance." ECF No. 4-2 at p. 12. Similarly, before this Court, Petitioner now claims that he believed the robbery charge against him had been dismissed. *See*, Petition, ECF No. 1 at p. 4 ("The Bronx County Grand Jury appeared to have dismissed this action, but Petitioner was again apprehended and detained for this same crime in 2016."). The Petition also baldly asserts that Petitioner was innocent of the crimes to which he pled. *See*, Petition, ECF No. 1 at p. 4 ("Petitioner was unaware of his nonimmigrant status and pled guilty to a crime he did not commit because the plea bargain allowed him to leave jail[.]"). However, in light of the entire administrative record, the Petition's assertions on these points are not plausible. At most, the record suggests that Petitioner may have been unaware of the immigration consequences of his guilty pleas. *See*, Petition (ECF No. 1) at ¶ 21 (Stating that "Petitioner was unaware of his nonimmigrant status" when he pled guilty.).

[62] An IJ dismissed the prior NTA, which had been filed on April 17, 2019, on procedural grounds. ECF No. 4-2 at p. 45.

[63] ECF No. 4-2 at pp. 47–49.

[64] ECF No. 4-2 at p. 50.

On July 5, 2019, Respondent filed an answer to the subject habeas petition. Preliminarily, Respondent indicates that contrary to what the Petition alleges, Petitioner received a bond hearing before an IJ, in which the IJ followed the procedures for bond hearings for aliens detained under § 1226(a) as set forth in 8 C.F.R. § 1236.1(d)(1), 8 C.F.R. § 236.1(c)(8)&(d)(1) and *Matter of Guerra*, 24 I.&N. Dec. 37 (BIA 2006). Further, Respondent contends that Petitioner has "received regular custody review determinations by the DHS."[65]   Accordingly, Respondent contends that insofar as the Petition demands a hearing, it is moot.

More generally, Respondent contends that Petitioner is detained pursuant to 8 U.S.C. § 1226(a), and that "his continued detention under 8 U.S.C. § 1226(a) is lawful under *Jennings v. Rodriguez*, 138 S.Ct. 830 (2018) and *Demore v. Kim*, 538 U.S. 510 (2003)."[66]  With regard to who must bear the burden of proof at a bond hearing, Respondent maintains that by statute, the alien must bear the burden at the initial bond hearing, but that as a matter of due process, the burden may shift to the Government if the detention becomes "indefinite."[67]   Respondent contends, though, that Petitioner's

---

[65]  ECF No. 4 at p. 11.

[66]  ECF No. 4 at p. 10.

[67]  ECF No. 5 at p. 3 ("As a matter of the statutory requirements, *Jennings v. Rodriguez*, 138 S.Ct. 830 (2018), the Supreme Court abrogated contrary Second Circuit law and held that the statute does not place the burden on the government to show that an alien seeking release on bond is a danger to the community.   Moreover, as a matter of due process, Pinnock Perry does not show that his detention – which is not indefinite in nature, and has thus far fun thirteen months – requires shifting the burden to the Government.").

detention is not indefinite and that the Government therefore did not violate Petitioner's due process rights by making him bear the burden of proof at the bond hearing. Additionally, Respondent states that insofar as Petitioner is claiming that it violated his Due Process rights to have to bear the burden at the bond hearing, that argument is unexhausted since Petitioner never appealed the IJ's custody ruling.[68]   On this point, Respondent states that administrative exhaustion is not required by statute, but is generally required "as a prudential matter."[69]

Further, Respondent contends that the process that Petitioner has received satisfies the Due Process test under *Mathews v. Eldridge*, 424 U.S. 319 (1976), since "Section 1226(a), it's implementing regulations, and BIA precedent provide extensive safeguards to protect against arbitrary deprivations of liberty while also protecting the Government's interest in ensuring that aliens do not flee or commit crimes while removal proceedings are ongoing."[70]   Respondent further contends that due process does not require the consideration of less-restrictive alternatives to detention, since "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal," citing *Demore*

---

[68] *See*, Respondent's Memo of Law (ECF No. 5 at p. 16) ("He could have appealed the [IJ]s] decision to the Board, but did not do so. 8 C.F.R. § 1236.1(d)(3)."). Nor did Petitioner pursue a further bond hearing under regulations permitting such hearings under certain circumstances. *See*, Respondent's Memo of Law (ECF No. 5 at pp. 13–14, 22).

[69] ECF No. 5 at p. 17.

[70] ECF No. 5 at p. 21.

*v. Kim.*    Finally, Respondent contends that Petitioner cannot maintain an 8th

Amendment "excessive bail" claim since he was denied bond.

On November 7, 2019, Petitioner filed a Reply. (ECF No. 6).   At the outset,

despite the various grounds that DHS has asserted for removing Petitioner from the

U.S., the Reply indicates that Petitioner is being detained based on his removability for

having overstayed his nonimmigrant visa. (EFC No. 6 at p. 3) ("Presently and in line

with the Notice to Appear, Petitioner is currently being held for overstaying his bounds in

[the] United States.").   The Court interprets this statement to mean that Petitioner

concedes that there is a valid basis for his removal proceedings, though he maintains

that his detention pending those proceedings is unconstitutional.   Beyond that, the

Reply reiterates that it was a violation of Due Process to require Petitioner to bear the

burden of proof at his bond hearing, and, further, that his detention for longer than six

months "violates his rights to substantive due process."[71]   As for the need to exhaust

administrative remedies, Petitioner contends that such exhaustion would be futile in his

case since he is raising constitutional claims, and neither an IJ nor the BIA can consider

constitutional claims.   The Reply further asserts that to the extent that removal

proceedings have been prolonged due to Petitioner's active litigation of the issues in

this case, he should not be "punished for exercising his rights."[72]

---

[71]  ECF No. 6 at p. 4.

[72]  ECF No. 6 at p. 11.

Finally, the Reply acknowledges that Petitioner is presently in the U.S. illegally. (ECF No. 6 at p. 3) ("Petitioner came into the United States on or about July 29, 1990, legitimately with a B1/B2 visa but overstayed.   He remained in the United States without authorization and spent about 32 years before he was moved into custody of Ice in 2017. [This date is incorrect, as the Petition admits that Petitioner came into the custody of Ice on May 25, 2018.]   Presently, and in line with the Notice to Appear, Petitioner is currently being held for overstaying his bounds in the United States.").

On December 17, 2019, and IJ issued a new order of removal against Petitioner. It is unclear whether Petitioner appealed that determination.

On March 18, 2020, the New York State Supreme Court, Appellate Division First Department, was scheduled to, and presumably did, hear oral argument on Petitioner's appeal of his criminal convictions. (Case No. 2019-3989, Indictment No. 3547/16, *People v. Andre Pinnock*).

The Court has considered the record and the parties' submissions

DISCUSSION

"[F]ederal courts have jurisdiction under § 2241 to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.' 28 U.S.C. § 2241." *Henderson v. I.N.S.*, 157 F.3d 106, 122 (2d Cir. 1998).

It is of course well settled that "detention during deportation proceedings [i]s a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523, 123 S. Ct. 1708, 1717, 155 L. Ed. 2d 724 (2003) ("*Demore*").   However, a constitutional violation may arise where such detention becomes unreasonable or unjustified.   On this point, courts frequently cite Justice Kennedy's concurring opinion in *Demore*, which stated:

> [S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, [an alien detained pending removal proceedings] could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified.   Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons.

*Demore*, 123 S.Ct.. at 1722 (Kennedy, concurring) (citations omitted).

Petitioner has filed the subject petition pursuant to 28 U.S.C. § 2241, proceeding *pro se*, and consequently the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).   In this regard, the Petition suggests, in part, that DHS improperly prolonged Petitioner's removal proceedings, and his time of detention, by pursuing removal based on Petitioner's convictions for aggravated felonies, when those convictions were not "final" for immigration purposes.

22

8 U.S.C. § 1101(a)(48)(A), states that "[t]he term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where-- (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or *nolo contendere* or has admitted sufficient facts to warrant a finding of guilt, and (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed."    This definition says nothing about the effect, if any, of an appeal of the alien's criminal conviction. However, BIA has interpreted the relevant statute and regulations to mean that a conviction is not "final" for immigration purposes while a direct appeal is pending. *See*, *Matter of Acosta*, 27 I. & N. Dec. 420, 432 (BIA 2018) ("[A] conviction does not attain a sufficient degree of finality for immigration purposes until the right to direct appellate review on the merits of the conviction has been exhausted or waived."); *see also, Rivas v. I.N.S.*, No. 02 CIV. 6778 (DLC), 2003 WL 192556, at *2 (S.D.N.Y. Jan. 27, 2003) ("A conviction is final and may be relied upon in removal proceedings when review of the conviction on direct appeal has concluded.").

As discussed earlier, the record indicates that between May, 2018, and approximately May 2019, Petitioner was detained while DHS pursued expedited removal proceedings against him under INA § 238(b), 8 U.S.C. § 1228(b), which is entitled "Expedited removal of aliens *convicted* of committing aggravated felonies." (emphasis added).    The basis of that proceeding was Petitioner's felony convictions. However, the record also indicates that Petitioner's convictions were not actually "final"

for immigration purposes.   In that regard, on April 12, 2019, an IJ dismissed the withholding-only proceeding precisely because Petitioner's criminal convictions were not final for immigration purposes, and DHS responded by cancelling the removal order that had been issued under INA § 238(b).

It is unclear exactly when DHS became aware that Petitioner's convictions were not final.   The record indicates that as of November 26, 2018, Petitioner's attorney had advised DHS that an appeal was pending, but DHS disputed that claim for some reason. *See*, ECF No. 4-2 at p. 3 ("On November 26, 2018, Mr. Barry Ronner, the attorney of record for PINNOCK, Andre requested through ERO[73] that his client be released from ICE custody as he alleged that his client's criminal conviction was on direct appeal.   After review, the Office of Chief Counsel (OCC) refuted this claim[.]'). As late as January 2019, DHS maintained that Petitioner was subject to mandatory detention under INA § 236(c) as a criminal alien, even though Petitioner maintained that he was appealing his convictions.[74]   Furthermore, even after the IJ dismissed the proceeding and DHS agreed to cancel the final removal order under INA § 238(b) because Petitioner's convictions were not final, DHS re-instituted removal proceedings under INA § 240 that were again based in part on Petitioner's criminal convictions, even though those convictions were still being challenged on direct appeal.

---

[73]  Enforcement and Removal Operations.

[74]  ECF No. 4-2 at p. 33, n. 2.

The practical effect of all of this seems to be that the entire first year of Petitioner's detention by DHS may have been unnecessary insofar as DHS spent that year pursuing relief that it ultimately could not have obtained.    That is, DHS could not remove Petitioner under INA § 238(b) since his convictions were not final.    These facts may be relevant to a determination of whether Petitioner's detention had become "unreasonable or unjustified" for due process purposes as of the date of his bond hearing.[75]

However, whether DHS acted reasonably or unreasonably in this regard is unclear from the record.    For example, the record gives no explanation for why DHS reportedly disputed the assertion by Petitioner's counsel that a criminal appeal was pending.    Nor does the record indicate why DHS re-instituted removal proceedings based on aggravated felony convictions after an IJ had already determined that those convictions were not final for immigration purposes.    Although these issues were apparent from the record and from Petitioner's submissions, Respondent's papers do not address them.

Accordingly, the Court will direct Respondent to file and serve a supplemental submission addressing the points raised by the Court above.    Specifically, the supplemental submission should address the issue framed above by the Court, *i.e.*, whether Petitioner's detention had become unreasonable or unjustified as of the date of

---

[75] The parties agree that Petitioner's claims rise or fall on this issue.

his bond hearing, in light of the fact that DHS was pursuing removal under INA § 238(b) based on convictions that were not final for immigration purposes.   The supplemental submission should indicate when DHS was first advised that Petitioner was appealing his convictions, and why DHS disputed the representation of Petitioner's counsel on that point.   The supplemental submission should further indicate why, after an IJ had ruled that Petitioner's convictions were not final, DHS commenced removal proceedings under INA § 240 based in part on those same convictions.   Additionally, the supplemental submission should indicate why, if DHS believed that Petitioner was subject to "mandatory custody" as a criminal alien under § 236(c),[76] DHS had previously notified Petitioner that he was eligible for release on an Order of Supervision.[77]

## CONCLUSION

For the reasons discussed above the Court will withhold issuing a ruling on the subject petition until after Respondent has filed the supplemental submission detailed above.   Respondent shall file and serve the supplemental submission on or before **May 22, 2020**.   Such submission shall not exceed fifteen (15) pages in length.   Thereafter, Petitioner may file and serve any further response on or before **June 5, 2020**.[78]   Such

---

[76] ECF No. 4-2 at p. 33.

[77] ECF No. 4-1 at pp. 41, 48–49; ECF No. 4-2 at pp. 8–9.

[78] In this regard, Petitioner may wish to contact his former attorney, Mr. Ronner, to ascertain when Ronner maintains that DHS was made aware of Petitioner's appeal of his felony convictions. To the extent that

response shall not exceed ten (10) pages in length.    The Clerk of the Court is directed to amend the docket to reflect the caption above.    All respondents besides Searls are dismissed from the action.

So Ordered.

Dated:        Rochester, New York
              May 11, 2020

ENTER:

CHARLES J. SIRAGUSA
United States District Judge

_____

Ronner has any information on that point it should be submitted to the Court in the form of a sworn affirmation from Ronner.