UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANDRE PAUL PINNOCK PERRY,
aka ANDRE PINNOCK, aka ANDRE
PAUL PINNOCK,

                                        Petitioner,

-vs-                                                                    DECISION and ORDER

                                                                       19-CV-6326 CJS

JEFFREY SEARLS, Field Office Director
Buffalo Federal Detention Facility ("BFDF"),

                                        Respondent.

_____

## INTRODUCTION

Andre Paul Pinnock Perry ("Petitioner") (A-208-910-422), proceeding *pro se*,

commenced this habeas proceeding pursuant to 28 U.S.C. § 2241 ("Section 2241")

against Respondent ("Respondent" or "the Government"), challenging his continued

detention in the custody of the United States Department of Homeland Security ("DHS"),

Immigration and Customs Enforcement ("ICE") pending the completion of removal

proceedings against him.   For the reasons discussed below, the Petition is denied.

## BACKGROUND

Unless otherwise noted, the facts as set forth below are taken from the petition

and administrative record in this action.

1

Petitioner is a native and citizen of Jamaica.   On July 28, 1990, Petitioner entered the United States pursuant to a six-month B2 visitor visa.[1]   Petitioner overstayed his visa and has remained in the United States illegally since that time.[2]

On January 17, 2006, Petitioner was arrested by the New York City Police and charged with Robbery in the First Degree, in violation of New York Penal Law ("PL") § 160.15 and Criminal Possession of a Weapon in the Second Degree in violation of PL § 265.03.   The Pre-Sentence Investigation Report ("PSR") indicated that Petitioner and an accomplice had robbed a livery cab driver while holding a gun to the driver's head.[3] Petitioner pled guilty in New York State Supreme Court, Bronx County, to Robbery in the Third Degree (New York Penal Law ("PL") § 160.05) in satisfaction of the charges. For his plea, Petitioner received a sentence of five years' probation.   However, Petitioner never reported to Probation, and the Court issued a bench warrant for his arrest.[4]

On August 4, 2015, Petitioner was arrested by the New York City Police and charged with Assault in the Second Degree in violation of PL § 120.05 and Menacing in the Second Degree in violation of PL § 120.14.   The record does not indicate a

---

[1]  ECF No. 4-1 at p. 13.

[2]  Petitioner indicates that while he considers himself an American, he has "come to understand that" he is "in the United States illegally." Certified Record of Proceedings, *Pinnock v. Barr*, Circuit Court Case No. 18-3797 (2d Cir.), Docket No. 30.

[3]  ECF No. 4-2 at p. 22.

[4]  ECF No. 4-2 at pp. 24, 26.

disposition of that charge.

On or about November 10, 2016, Petitioner was arrested by New York City Police and charged with Criminal Possession of a Weapon in the Second Degree in violation of PL § 265.03; Criminal Possession of a Firearm in violation of PL § 265.01-b(1); and Unlawful Possession of Marijuana in violation of Penal Law § 221.05.[5]   A Grand Jury subsequently returned a three-count indictment accusing Petitioner of those same offenses.[6]   On or about May 2, 2017, Petitioner pled guilty in New York State Supreme Court, Bronx County, to Criminal Possession of a Firearm ( PL § 265.01-b) in satisfaction of the charges.[7]   The PSR indicated that Petitioner had been arrested with a loaded .32 caliber pistol in his waistband, extra ammunition in his sock, and a small quantity of marijuana.   Petitioner was sentenced as a Second Felony Offender to an indeterminate sentence of eighteen months-to-three years.[8]   At that same time, on his plea of guilty to violating probation (in connection with the earlier Robbery 3rd conviction), Petitioner was sentenced to an indeterminate term of one-to-three years, with the sentence to run concurrent with the sentence imposed for the conviction for Criminal Possession of a Firearm.[9]

---

[5]  ECF No. 4-1 at p. 14.

[6]  ECF No. 4-1 at pp. 16–17.

[7]  The PSR quotes Petitioner as stating that he pled guilty to the crime because he had been caught "red handed." ECF No. 4-2 at p. 29.

[8]  ECF No. 4-1 at p. 26.

[9]  ECF No. 4-1 at p. 25; ECF No. 4-2 at pp. 19–20, 26, 29.

Petitioner subsequently began serving his prison sentence in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").

On June 26, 2017, the Department of Homeland Security ("DHS") commenced administrative removal proceedings against Petitioner based on INA § 237(a)(1)(B) ("nonimmigrant overstay"), INA § 237(a)(2)(C) ("firearms conviction"), INA § 237(a)(2)(A)(iii) ("aggravated felony") and INA § 237(a)(2)(A)(iii) ("theft or burglary offense with minimum one year imprisonment").[10]

In this regard, DHS elected to proceed by way of expedited removal order pursuant to INA § 238(b), 8 U.S.C. § 1228(b), entitled "Expedited removal of aliens convicted of committing aggravated felonies." This expedited removal process for aliens convicted of aggravated felonies does not require that an Immigration Judge ("IJ") issue the removal order. *See, generally, Osuna-Gutierrez v. Johnson*, 838 F.3d 1030, 1033–34 (10th Cir. 2016) ("Congress gave power to the AG to create an expedited removal program, which the AG created within INS, and Congress later transferred that power to DHS. Therefore, DHS properly has authority to initiate expedited removal proceedings for aggravated felons . . . .   Nothing in § 1228 requires that an IJ preside over the expedited removal process.").

Regarding Petitioner's felony convictions, he did not file a timely notice of appeal. However, on May 15, 2018, the New York State Supreme Court, Appellate Division First

---

[10] ECF No. 4-1 at p. 19.

Department, granted Petitioner leave to file a late direct appeal.[11]    Significantly,

though, neither Petitioner nor DHS learned of that fact until many months later, in

November 2018, as discussed further below.    Indeed, Petitioner's former attorney

indicates that he first met with Petitioner in September 2018, at which time Petitioner

was unaware that his request for permission to file a late appeal had been granted.[12]

On May 25, 2018, DOCCS transferred custody of Petitioner to DHS.    At that

time, DHS indicated that Petitioner would be detained pending the completion of his

removal proceedings.[13]

In June 2018, DHS checked to see whether Petitioner had filed any appeal of his

robbery conviction pending with the New York State Courts and found none.

Consequently, DHS proceeded with expedited removal.[14]

On June 15, 2018, DHS issued a Final Administrative Removal Order finding that

Petitioner was deportable under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii) as

an alien having been convicted of aggravated felonies as defined in 8 U.S.C. §

1101(a)(43)(F) & (G).[15]    The removal order was issued by a DHS official pursuant to

the expedited removal procedures contained in INA § 238(b) for aliens convicted of

---

[11] ECF No. 4-1 at p. 33.

[12] *See*, Ronner Declaration, ECF No. 10 at ¶ 5.

[13] ECF No. 4-1 at p 28.

[14] ECF No. 9 at p. 2.

[15] ECF No. 4-1 at p. 37.

committing aggravated felonies.[16]

     When Petitioner was initially interviewed by DHS officials in 2017, he had not expressed any fear of returning to Jamaica.    Rather, Petitioner had indicated only that he had been young (seven years of age) when he came to the United States.[17] However, Petitioner subsequently alleged a fear of "persecution or torture" that an asylum officer found credible.[18]    As a result, on or about August 8, 2018, pursuant to 8 CFR § 208.31(e) DHS referred the matter to an Immigration Judge ("IJ") for a determination of withholding of removal.[19]    That is, DHS placed Petitioner in "withholding only" proceedings,[20]  pursuant to INA § 241(b)(3)(B) and 8 C.F.R. § 208.16, to determine whether, despite the fact that he was removable, removal to Jamaica

---

[16]  ECF No. 4-1 at p. 36.

[17]  ECF No. 4-1 at p. 21 ("Pinnock claims no credible fear of returning to Jamaica, citing only that he left when was young.").

[18]  ECF No. 4-1 at pp. 38, 43.

[19]  ECF No. 4-1 at p. 38; *see also, generally*, Withholding of removal, 2 Immigration Law Service 2d § 10:231 ("While the granting of asylum is discretionary, withholding of removal to a particular country is mandatory if the government determines that the applicant's life or freedom would be threatened in that country. . . .    A grant of withholding of removal does not give the applicant an automatic right to remain in the United States nor does it give him or her the right to apply for lawful permanent resident status, obtain many federal benefits and assistance, or bring his or her family to the United States. Further, a noncitizen who is granted withholding of removal may be removed to a third country in which he or she would not face persecution if the United States is able to identify such a country willing to accept him or her.").

[20]  ECF No. 4-1 at p. 43.

should be withheld.[21]

On August 10, 2018, a DHS official indicated that Petitioner should continue to be detained pending a final administrative determination in his case.[22]   In that regard, although DHS had issued a removal order, the order was not "final," due to the pendency of the "withholding only" proceeding, and Petitioner therefore remained detained pursuant to 8 U.S.C. § 1226, not 8 U.S.C. § 1231. *See, Guerra v. Shanahan*, 831 F.3d 59, 64 (2d Cir. 2016) ("Guerra's removal order is not final during the pendency of his withholding-only proceedings . . . . Accordingly, the language and structure of the statutes dictate the conclusion that Guerra's detention during the pendency of his withholding-only proceedings is detention pursuant to 8 U.S.C. § 1226(a).").[23]

---

[21] *See, I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 419, 119 S. Ct. 1439, 1443, 143 L. Ed. 2d 590 (1999 ("Under the immigration laws, withholding is distinct from asylum, although the two forms of relief serve similar purposes. Whereas withholding only bars deporting an alien to a particular country or countries, a grant of asylum permits an alien to remain in the United States and to apply for permanent residency after one year.").

[22] ECF No. 4-1 at p. 40.

[23] *See also, generally, Vargas v. Wolf*, No. 219CV02135KJDDJA, 2020 WL 1929842 at *3 (D. Nev. Apr. 21, 2020) ("The INA provides a "complex statutory framework of detention authority," codified at 8 U.S.C. §§ 1226 and 1231. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). Where a non-citizen falls within the statutory scheme "can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Id.* In general, § 1226(a) governs detention during the pendency of a non-citizen's removal proceedings, and § 1231 governs detention following the issuance of a final removal order. DHS has discretionary authority under § 1226(a) to determine whether a non-citizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the non-citizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory.") (footnote

On August 30, 2018, DHS served on Petitioner a "Notice to Alien of File Custody Review."[24]  The notice indicated that DHS would conduct a file review of Petitioner's custody on September 27, 2018.   The notice further indicated that in order to obtain release on an Order of Supervision, Petitioner would need to demonstrate by clear and convincing documentary evidence that he was neither dangerous nor a flight risk.[25]

On October 17, 2018, DHS issued a "Decision to Continue Detention."[26]   The decision indicated that DHS had reviewed the circumstances of Petitioner's case and had determined that he should remain detained.   In that regard, DHS indicated that Petitioner's criminal record indicated that he had a "wanton disregard for the laws of the United States."[27]   Additionally, the decision observed that Petitioner had provided DHS with only minimal information about any community ties.   DHS concluded that Petitioner was both a danger to the community and a flight risk.[28]

On or about November 1, 2018, Petitioner made a motion for a change of venue from Batavia, New York, to New York City.[29]   On November 1, 2018, the IJ denied the application for change of venue.[30]   On November 5, 2018, Petitioner filed an

---

omitted).

[24] ECF No. 4-1 at p. 41.

[25] ECF No. 4-1 at p. 41.

[26] ECF No. 4-1 at pp. 42–43.

[27] ECF No. 4-1 at p. 43.

[28] ECF No. 4-1 at p. 43.

[29] ECF No. 4-2 at p. 6.

[30] ECF No. 4-2 at p. 6.

"interlocutory appeal" to the Board of Immigration Appeals ("BIA") of the denial of the motion to change venue.[31]

On November 7, 2018, DHS issued another "Decision to Continue Detention," again finding that Petitioner's detention should continue pending the completion of his "withholding only" proceeding, since he posed a danger to the community and a risk of flight.[32]   The decision further noted that Petitioner was scheduled to appear before an IJ on 13, 2018 for a "withholding only" proceeding, and that he was scheduled to receive another custody review on December 26, 2018.

In or about "mid to late November 2018," Petitioner's attorney learned that the New York State Supreme Court, Appellate Division First Department, had granted Petitioner's request to pursue a late appeal of his criminal convictions.[33]   Thereafter, on or about November 26, 2018, Petitioner filed a motion to reconsider and rescind the removal order on the grounds that his convictions were not final.   As part of this application, Petitioner submitted paperwork indicating that he had a pending appeal of his criminal convictions.   According to the Government, this was the first notice that DHS received that Petitioner was appealing the convictions which supplied the basis for his expedited removal.[34]

---

[31] ECF No. 4-1 at pp. 6, 51.

[32] ECF No. 4-1 at pp 48–49.

[33] ECF No. 10 at ¶ 6.

[34] ECF No. 9 at pp. 2-3.

On November 27, 2018, DHS denied Petitioner's request to re-open the Final Administrative Removal Order.   In that regard, DHS indicated that Plaintiff had not shown that his receipt of permission to file a late appeal affected the "finality" of his criminal convictions for purposes of removal, citing *Matter of J.M. Acosta*, 27 I.&N. Dec. 420 (BIA 2018).[35]

On December 7, 2018, BIA denied the interlocutory appeal of the IJ's denial of Petitioner's motion for change of venue.[36]   In that decision, BIA observed that Petitioner "apparently d[id] not dispute his removability,"[37]  though he was requesting withholding of removal to Jamaica.   Additionally, BIA indicated that to the extent Petitioner was challenging his underlying criminal convictions, such challenge was "speculative."[38]

On December 13, 2018, DHS notified Petitioner of its intent to conduct a further custody review on December 20, 2018.[39]   Petitioner requested that the review be conducted by in-person interview, with his attorney present.[40]   In connection with that

---

[35]  Evidently it was not until May 2019 that Petitioner informed the Immigration Court of the grounds for his appeal. ECF No. 10 at ¶ 9.

[36]  ECF No. 4-2 at p. 6.

[37]  ECF No. 4-2 at p. 6.

[38]  ECF No. 4-2 at p. 6.   In this regard, DHS was again apparently relying on its reading of *Matter of J.M. Acosta*, 27 I.&N. Dec. 420 (BIA 2018) to conclude that Petitioner's late-filed appeal was nevertheless final for purposes of removal. See, ECF No. 9 at p. 3.

[39]  Docket No. 4-2 at pp. 8–9.

[40]  ECF No. 4-2 at p. 9.

custody review, Petitioner completed a written questionnaire[41] in which he attempted to demonstrate his ties to the community in the United States by listing his employer and various family and friends.   Regarding his criminal convictions, Petitioner asserted that he was currently released on parole by the State of New York.   Additionally, Petitioner stated: "I was convicted of Robbery 3rd, but did not commit the crime.   Because of this I was convicted of Criminal Possession of a Firearm."[42]  Petitioner also admitted that he had previously failed to appear for proceedings in connection with his state criminal charges, but blamed it on that fact that he had needed to care for his "ailing fiancé."[43]

On December 21, 2018, Petitioner filed a petition for review with the United States Court of Appeals for the Second Circuit, challenging DHS's decision not to re-open the Final Administrative Removal Order.

On January 14, 2019, an IJ conducted a bond hearing.[44]   Regarding that hearing, DHS filed various evidence purporting to show that Petitioner should remain detained.[45]   Such evidence included the state-court judgments and commitment orders evidencing Petitioner's convictions for Robbery in the Third Degree and Criminal Possession of a Firearm.   DHS also submitted the PSRs relating to those convictions.

---

[41]  ECF No. 4-2 at pp. 10–15.

[42]  ECF No. 4-2 at p. 11.   This statement by Petitioner, in addition to being nonsensical, is contradicted by the record as discussed further below.

[43]  ECF No. 4-2 at p. 12.

[44]  ECF No. 4-2 at p. 33.

[45]  ECF No. 4-2 at pp. 16–31.

In that regard, the PSR relating to the robbery conviction stated, as noted earlier, that Petitioner had originally been sentenced to probation upon his conviction after pleading guilty, but that he never reported to probation, resulting in the issuance of a bench warrant,[46] and that subsequently Petitioner had "remained at large for approximately seven years."[47]   Additionally, the PSR had "strongly" recommended that Petitioner be incarcerated for his crimes.[48]

On January 18, 2019, the IJ issued a Custody Decision and Order denying Petitioner's request for release on bond.[49] As a preliminary matter, the IJ rejected the argument by DHS that Petitioner was subject to mandatory detention as a criminal alien under INA § 236(c).   Instead, the IJ found that Petitioner was detained pursuant to 236(a) and was therefore at least eligible to be released on bond.   On this point, the IJ referenced the Second Circuit decision *Guerra v. Shanahan*, 831 F.3d 59 (2d Cir. 2016) and stated:

> On December 28, 2018, [Petitioner] filed a motion for a custody redetermination hearing or alternatively, a '*Joseph*-style' hearing pursuant to *Matter of Joseph*, 22 I&N Dec. 799 (BIA 1999).   The Court concludes that [the hearing] should be deemed a *Guerra* hearing.[50]

---

[46] ECF No. 4-2 at p. 24.

[47] ECF No. 4-2 at p. 26.

[48] ECF No. 4-2 at p. 26.

[49] ECF No. 4-2 at pp. 33–35.

[50] In referring to a "*Guerra* hearing," it is unclear to the Court whether the IJ was referring to *Guerra v. Shanahan* or to *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006). *See*, Respondent's Memo of Law, ECF No. 5 at pp. 12, 13 n. 4.

***

> [Petitioner] argued that because his underlying convictions are now on
> direct appeal, they are no longer final for immigration purposes.
> Therefore, he concluded that he is not subject to INA § 236(c) mandatory
> custody, but rather INA § 236(a) custody.   The DHS argued that
> [Petitioner] was subject to mandatory custody under INA § 236(c).   In the
> alternative, the DHS argued that if the custody hearing was held according
> to *Guerra v. Shanahan*, 831 F.3d 59 (2d Cir. 2016), and [Petitioner] was
> therefore subject to INA § 236(a) custody, he would still be a danger in the
> community.   The Court agrees with the latter DHS argument.

ECF No. 4-2 at pp. 33–34, notes 1 & 2.[51]   As indicated, the IJ agreed with DHS that

bond should be denied since Petitioner posed a danger to the community.   In that

regard, the IJ noted that pursuant to 8 C.F.R. § 1236.1(c)(8), Petitioner had the burden

to prove that he was neither a flight risk nor a danger to the community.[52]  The IJ found,

based on Petitioner's criminal history, that Petitioner posed a danger to the

community.[53]   Petitioner did not appeal this ruling.

On April 2, 2019, DHS notified Petitioner that it had conducted a further custody

review and had decided to keep him detained.   With respect to this decision, the notice

---

[51] Respondent contends that in this regard the IJ "concluded that [Petitioner] was not subject to
mandatory detention under 8 U.S.C. § 1226(c) because his conviction is now on direct appeal." ECF No. 4
at p. 6.   The Court assumes that Respondent is correct as to the IJ's thought process, even though the IJ
actually never explained the basis for his finding. *See, Matter of Acosta*, 27 I. & N. Dec. 420, 432 (BIA 2018)
("[A] conviction does not attain a sufficient degree of finality for immigration purposes until the right to
direct appellate review on the merits of the conviction has been exhausted or waived.").

[52] *See,* Answer and Return, ECF No 4 at p. 6 (Acknowledging that the IJ put the burden on Petitioner,
"pursuant to the regulations.").

[53] ECF No. 4-2 at p. 35.

again referred to Petitioner's criminal history and to the fact that a final order of removal had been issued on June 29, 2018.   The notice stated that due to Petitioner's "claim of fear of returning to Jamaica," "ICE [had been] unable to move forward with [his] removal," but that a hearing was scheduled for April 4, 2019.[54]

On April 12, 2019, an IJ dismissed the "withholding only" proceedings, "based on the government's failure to establish a 'final' conviction for immigration purposes."[55]   In this regard, the IJ evidently concluded that Petitioner's convictions were not final, based on the fact that he had been granted leave to file a late appeal.[56]   In the alternative, the IJ denied Petitioner's request for withholding of removal.[57]

In response to this ruling, rather than appealing the IJ's decision DHS elected to cancel the administrative removal order (that had been issued under INA § 238(b), 8 U.S.C. § 1228(b)) and to pursue a new removal order under INA § 240, 8 U.S.C. § 1229a.[58]

On April 15, 2019, DHS issued a further Notice of Custody Determination, indicating that Petitioner's detention would be continued.[59]

---

[54] ECF No. 4-2 at p. 36.

[55] ECF No. 4-2 at p. 40.

[56] Evidently it was not until May 2019 that Petitioner's appellate attorney advised the Immigration Court of the legal grounds for Petitioner's appeal. ECF No. 10 at ¶ 9.

[57] ECF No. 4-2 at p. 40.

[58] ECF No. 4 at p. 8.

[59] ECF No. 4-2 at p. 41.

On April 16, 2019, DHS filed a new Notice to Appear ("NTA"), charging Petitioner with being removable under INA § 240 based solely on INA § 237(a)(1)(B) (nonimmigrant overstay).

The following day, April 17, 2019, DHS filed another notice to appear, this time charging Petitioner with being removable under Section 240 based on three grounds: 1) INA § 237(a)(1)(B) (nonimmigrant overstay); 2) INA § 237(a)(2)(A)(iii) (aggravated felony – crime of violence); and 3) INA § 237(a)(2)(A)(iii) (aggravated felony -theft or burglary offense with minimum one year imprisonment).[60]   This notice to appear was apparently intended to supersede the notice to appear filed the day before. An immigration judge subsequently found that removal proceedings could proceed on all three grounds.[61]

On May 3, 2019, Petitioner commenced this action by filing the subject § 2241 habeas petition, proceeding *pro se*.   Petitioner drafted the Petition using a fill-in-the-blank form that contains many pages of boilerplate legal argument. The gist of this legal argument is that aliens detained pending removal proceedings are entitled to individualized bond hearings (to determine whether they pose a danger to the community or a risk of flight) whenever detention exceeds six months; or, when the alien has "a substantial defense to removal";[62]  or when the detention has become

---

[60]  ECF No. 1 at pp. 21–23.

[61]  ECF No. 9 at p. 5.

[62]  The Court expresses no opinion as to whether Petitioner is correct on this point, but notes that,

15

"unreasonably prolonged."[63]   The Petition further contends that at any such bond hearing, the Government must bear the burden of proof, by clear and convincing evidence, to show that the alien is either dangerous or likely to flee, and that even if the Government does so, it cannot detain the alien without first demonstrating that less-restrictive alternatives to detention are inadequate to achieve the Government's objectives.[64]

As for factual allegations specific to Petitioner, the Petition alleges that Petitioner has been in DHS custody since May 25, 2018, without a custody hearing, which, the Petition maintains, violates Petitioner's rights under the Due Process Clause of the Fifth Amendment, and the Excessive Bail Clause of the Eighth Amendment, to the U.S. Constitution. The Petition asserts that during the period of Petitioner's detention by DHS, no "immigration judge has conducted a hearing to determine whether lengthy incarceration is warranted based on danger or flight."[65]   (Although, as detailed above, an Immigration Judge did, in fact, conduct such a hearing in January, 2019.)   The

---

regardless, he has not made any showing that he has a "substantial defense" to removal.   Rather, he merely states, in his Reply, that he has an unspecified claim for cancellation of removal that is "viable and non-frivolous." ECF No. 6 at p. 12.

[63]  Petition, ECF No. 1 at pp. 4, 6–7.

[64]  *See*, Petition (ECF No. 1 at pp. 6,9) ("[T]he Supreme Court has recognized only two valid purposes for civil detention – to mitigate the risks of danger to the community and to prevent flight.   . . .   Detention is not reasonably related to th[ese] purpose[s] if there are alternative conditions of release that could mitigate [danger to the community and] risk of flight.") (citations omitted).

[65]  ECF No. 1 at p. 1.

Petition contends that the Government cannot continue to detain Petitioner unless it first provides him with a hearing and demonstrates by clear and convincing evidence that he poses a danger to society or a risk of flight and that less-restrictive alternatives to detention would be inadequate.

The Petition also baldly asserts that Petitioner is innocent of the crimes for which he was convicted, despite the facts set forth above[66]  and despite the fact that

---

[66]  As discussed earlier, state court records indicate that in 2006 Petitioner pled guilty to Robbery in the Third Degree in satisfaction of several other charges and was sentenced to five year's probation. However, Petitioner never reported to probation and bench warrant was issued for his arrest, though he was not arrested on that warrant until seven years later.    State Court records further show that in 2016 Petitioner pled guilty Criminal Possession of a Firearm in satisfaction of several charges, and was sentenced to one-to-three years in prison, and at that same time was re-sentenced for his Robbery conviction and violation of probation.    The PSRs related to those convictions indicate that Plaintiff admitted to actually committing the crimes to which he pled guilty, and, indeed, with regard to the latter conviction, admitted that he was caught "red handed." ECF No. -2 at p. 29.    However, in his argument to the IJ in support of his request for a bond hearing, Petitioner asserted that he was unaware that he had been convicted of Robbery, stating, "In 2006 I missed a date after being released by a grand jury, because I had to care for my ailing fiance." ECF No. 4-2 at p. 12.    Similarly, before this Court, Petitioner now claims that he believed the robbery charge against him had been dismissed. *See*, Petition, ECF No. 1 at p. 4 ("The Bronx County Grand Jury appeared to have dismissed this action, but Petitioner was again apprehended and detained for this same crime in 2016.").    The Petition also baldly asserts that Petitioner was innocent of the crimes to which he pled. *See*, Petition, ECF No. 1 at p. 4 ("Petitioner was unaware of his nonimmigrant status and pled guilty to a crime he did not commit because the plea bargain allowed him to leave jail[.]").    However, in light of the entire administrative record, the Petition's assertions on these points are not plausible.    At most, the record suggests that Petitioner may have been unaware of the immigration consequences of his guilty pleas. *See*, Petition (ECF No. 1) at ¶ 21 (Stating that "Petitioner was unaware of his nonimmigrant status" when he pled guilty.).

Petitioner's criminal appeal seems to argue not that he was actually innocent of the crimes to which he pled guilty, but that he was not properly advised of the potential immigration consequences of pleading guilty.[67]   Nevertheless, the Petition does not dispute that Petitioner is removable due to having overstayed his visa, even without regard to the criminal convictions.

On May 30, 2019, Petitioner and the Government stipulated to withdraw the Petition for Review filed with the Second Circuit, since DHS had already cancelled the administrative removal order entered under INA § 238(b).

On June 24, 2019, DHS served Petitioner with yet another NTA,[68]  again alleging that he is subject to removal on three grounds: 1) INA § 237(a)(1)(B) (nonimmigrant overstay); 2) INA § 237(a)(2)(A)(iii) (aggravated felony – crime of violence); and 3) INA § 237(a)(2)(A)(iii) (aggravated felony -theft or burglary offense with minimum one year imprisonment).[69]   At the same time, DHS determined that it would continue detaining Petitioner pending a final administrative determination.[70]

---

[67] As support for this assertion, the Courts takes judicial notice of a decision (Slip Op 02731) of the New York State Supreme Court, Appellate Division First Department, dated May 7, 2020, wherein the court remanded the action to allow Petitioner an opportunity to move to withdraw his guilty plea, stating in pertinent part: "When defendant, a noncitizen, pleaded guilty to criminal possession of a firearm, the court did not advise him that if he was not a citizen, he could be deported as a consequence of his plea."

[68] An IJ dismissed the prior NTA, which had been filed on April 17, 2019, on procedural grounds. ECF No. 4-2 at p. 45.

[69] ECF No. 4-2 at pp. 47–49.

[70] ECF No. 4-2 at p. 50.

On July 5, 2019, Respondent filed an answer to the subject habeas petition. Preliminarily, Respondent indicates that contrary to what the Petition alleges, Petitioner received a bond hearing before an IJ, in which the IJ followed the procedures for bond hearings for aliens detained under § 1226(a) as set forth in 8 C.F.R. § 1236.1(d)(1), 8 C.F.R. § 236.1(c)(8)&(d)(1) and *Matter of Guerra*, 24 I.&N. Dec. 37 (BIA 2006). Further, Respondent contends that Petitioner has "received regular custody review determinations by the DHS."[71]   Accordingly, Respondent contends that insofar as the Petition demands a hearing, it is moot.

More generally, Respondent contends that Petitioner is detained pursuant to 8 U.S.C. § 1226(a), and that "his continued detention under 8 U.S.C. § 1226(a) is lawful under *Jennings v. Rodriguez*, 138 S.Ct. 830 (2018) and *Demore v. Kim*, 538 U.S. 510 (2003)."[72]  With regard to who must bear the burden of proof at a bond hearing, Respondent maintains that by statute, the alien must bear the burden at the initial bond hearing, but that as a matter of due process, the burden may shift to the Government if the detention becomes "indefinite."[73]   Respondent contends, though, that Petitioner's

---

[71]  ECF No. 4 at p. 11.

[72]  ECF No. 4 at p. 10.

[73]  ECF No. 5 at p. 3 ("As a matter of the statutory requirements, *Jennings v. Rodriguez*, 138 S.Ct. 830 (2018), the Supreme Court abrogated contrary Second Circuit law and held that the statute does not place the burden on the government to show that an alien seeking release on bond is a danger to the community.   Moreover, as a matter of due process, Pinnock Perry does not show that his detention – which is not indefinite in nature, and has thus far fun thirteen months – requires shifting the burden to the Government.").

detention is not indefinite and that the Government therefore did not violate Petitioner's due process rights by making him bear the burden of proof at the bond hearing. Additionally, Respondent states that insofar as Petitioner is claiming that it violated his Due Process rights to have to bear the burden at the bond hearing, that argument is unexhausted since Petitioner never appealed the IJ's custody ruling.[74]   On this point, Respondent states that administrative exhaustion is not required by statute, but is generally required "as a prudential matter."[75]

Further, Respondent contends that the process that Petitioner has received satisfies the Due Process test under *Mathews v. Eldridge*, 424 U.S. 319 (1976), since "Section 1226(a), it's implementing regulations, and BIA precedent provide extensive safeguards to protect against arbitrary deprivations of liberty while also protecting the Government's interest in ensuring that aliens do not flee or commit crimes while removal proceedings are ongoing."[76]   Respondent further contends that due process does not require the consideration of less-restrictive alternatives to detention, since "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal," citing *Demore*

---

[74] *See*, Respondent's Memo of Law (ECF No. 5 at p. 16) ("He could have appealed the [IJ]s] decision to the Board, but did not do so. 8 C.F.R. § 1236.1(d)(3).").   Nor did Petitioner pursue a further bond hearing under regulations permitting such hearings under certain circumstances. *See*, Respondent's Memo of Law (ECF No. 5 at pp. 13–14, 22).

[75] ECF No. 5 at p. 17.

[76] ECF No. 5 at p. 21.

*v. Kim.*   Finally, Respondent contends that Petitioner cannot maintain an 8th Amendment "excessive bail" claim since he was denied bond.

On November 7, 2019, Petitioner filed a Reply. (ECF No. 6).   At the outset, the Reply acknowledges that Petitioner is presently in the U.S. illegally. (ECF No. 6 at p. 3) ("Petitioner came into the United States on or about July 29, 1990, legitimately with a B1/B2 visa but overstayed.   . .   Presently, and in line with the Notice to Appear, Petitioner is currently being held for overstaying his bounds in the United States."). Additionally, the Reply now admits that Petitioner received a bond hearing.

However, the Reply maintains that Petitioner's detention has become unreasonably prolonged[77]  and that the procedures at the bond hearing were "constitutionally and statutorily infirm" insofar as they required him to bear the burden of proof.   In this regard the Reply refers to violations of both procedural and substantive due process.   As for the need to exhaust administrative remedies, the Reply contends that such exhaustion would be futile in Petitioner's case since he is raising constitutional claims, which neither an IJ nor the BIA can consider.   For all of these reasons, the Reply contends that Petitioner is entitled to "another bond hearing"[78]  at which the Government must bear the burden of proof by clear and convincing evidence.

---

[77]  The Reply asserts that to the extent that removal proceedings have been prolonged by Petitioner's litigation of the issues in this case, he should not be "punished for exercising his rights." ECF No. 6 at p. 11.

[78]  ECF No. 6 at p. 8.

On December 17, 2019, and IJ issued a new order of removal against Petitioner.[79]  In that regard, the IJ found, based on additional information that the Petitioner had just provided concerning his criminal appeal, that Petitioner's convictions were not final for immigration purposes and could not be used to support a final order of removal.[80]   The IJ, though, issued an order of removal based on Petitioner overstaying his visa.[81]

It is unclear whether Petitioner appealed that determination.   However, as of the date of the Government's last status report to the Court, Petitioner's removal order had not become final, and he remained in custody pursuant to 8 U.S.C. § 1226(a), presumably while he appeals the removal order and/or seeks relief from removal.[82]

The Court has considered the record and the parties' submissions.[83]

## DISCUSSION

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir.2003) (quoting 28 U.S.C.

---

[79]  ECF No. 9-1 at pp. 58-65.

[80]  See, ECF No. 9-1 at pp. 50-51.

[81]  ECF No. 9-1 at p. 65.

[82]  ECF No. 7 at p. 3.

[83]  This includes the submissions (ECF Nos. 9-11)that were received in response to the Court's order requesting additional briefing, ECF No. 8.

§ 2241(c)(3)); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (A petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Petitioner has filed the subject petition proceeding *pro se*, and consequently the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).   Construing the Petition in this manner, it first asserts that Petitioner has been in DHS's custody since May 2018 without any type of bond hearing.[84]   However, that assertion is clearly incorrect.   Petitioner had a custody hearing before an IJ at which he was represented by counsel and had the opportunity to submit evidence showing that he was neither a danger to the community nor a risk of flight.   In addition to that, Petitioner has received several reviews "on paper" of his custody situation.   Accordingly, insofar as the Petition contends that Petitioner has been denied any type of hearing whatsoever it plainly lacks merit.

The real thrust of the Petition is, rather, that Petitioner has been detained for an unreasonably prolonged period and is therefore entitled to a bond hearing at which the Government must bear the burden of proof by clear and convincing evidence, with detention being allowed only after a finding that less restrictive alternatives would not be adequate to protect the Government's interests. Petitioner contends that his bond

---

[84]  Petition, ECF No. 1 at ¶ ¶ 2-3.

hearing did not comport with those requirements, and that his federal due process rights have therefore been violated.    With regard to the duration of Petitioner's confinement, the Petition maintains that it is unreasonably prolonged either because it has exceeded six months in duration, or because it was prolonged unnecessarily while DHS pursued removal proceedings based on criminal convictions that were not "final" for immigration purposes.[85]   Finally, the Petition alleges that Petitioner's rights under the 8th Amendment's excessive bail clause were violated.

<u>The Eighth Amendment "Excessive Bail" Claim Lacks Merit</u>

As just mentioned, the Petition alleges an Eighth Amendment "excessive bail" constitutional violation, based on the same facts that form the basis of the due process claims.   In that regard, the Petition states that

> Petitioner's prolonged detention without a hearing on danger and flight risk violates . . . the Eighth Amendment's Excessive Bail Clause.
>
>          ***
>
> The Eighth Amendment prohibits "[e]xcessive bail." U.S. Const. Amend. XIII.   The government's categorical denial of bail to certain noncitizens violates the right to bail encompassed by the Eighth Amendment. See, *Jennings*, 2018 WL 1054878 at *29 (Breyer, J., dissenting).

Petition, ECF No. 1 at pp. 1, 10.   In response, Respondent argues that since

---

[85]  This latter argument has two aspects:   First, that the initial expedited removal proceeding was maintained after Petitioner was granted permission to file a late notice of appeal; and, second, that after the initial removal order was cancelled, the Government instituted new removal proceedings that were based in part on the same criminal convictions.

Petitioner's bond request "was denied, he does not have a viable excessive bail claim," citing *Mugiraneza v. Whitaker*, No. 6:19-CV-6140, 2019 WL 2395316 at *5 (W.D.N.Y. Jun. 6, 2019) ("Here, Petitioner has not been granted release on bond; thus, he has no basis for arguing that the Government is asking him to pay an excessive amount of bail in order to be released from custody.").

Petitioner's Reply does not acknowledge or dispute Respondent's argument on this point, nor does it mention the Eighth Amendment at all, though it repeatedly references the Fifth Amendment.   Accordingly, it appears that Petitioner has abandoned the claim.   However, even if Petitioner has not abandoned the claim, it lacks merit since Petitioner has not made any showing whatsoever to support the bare suggestion in the Petition that there is a government policy of "categorical denial of bail to certain noncitizens" that injured him.   Rather, the record indicates that Petitioner's bond request was considered and denied based on the particular facts of his case which, the IJ found, made him a danger to the community.   Accordingly, to the extent that Petitioner has not abandoned the Eighth Amendment claim, it is denied.

<u>The Due Process Claims</u>

Petitioner maintains that his continued detention has become "indefinite" or "unreasonably prolonged," and that he is therefore entitled, under the Fifth Amendment's Due Process Clause, to an individualized hearing at which the Government must bear the burden of proof to show, by clear and convincing evidence, that he is a flight risk or a danger to society. Petitioner contends that his continued

detention without such a hearing violates both substantive due process and procedural due process.

### Substantive Due Process

A substantive due process violation may occur where an alien who has been detained pending removal can establish that his removal is not reasonably foreseeable. *See, Wang v. Ashcroft*, 320 F.3d at 146 (Observing that in *Zadvydas*, "[i]n order to save § 241 from unconstitutionality, the Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute. ... Under *Zadvydas*, then, detention of an alien 'once removal is no longer reasonably foreseeable' not only violates § 241, it also violates the Due Process Clause."). However, there is no due process violation where removal remains reasonably foreseeable. *See, id.* ("Wang's due process rights are not jeopardized by his continued detention as long as his removal remains reasonably foreseeable.").

In the instant case, the Petition refers in passing to a substantive due process violation, but Petitioner has not made any showing that his removal is unlikely to occur in the near future.   Consequently, to the extent that the Petition is attempting to assert a substantive due process claim, it lacks merit and is denied.

### Procedural Due Process

As mentioned earlier, Petitioner contends that an alien detained pending the completion of removal proceedings becomes entitled to a bond hearing at which the Government bears the burden of proof whenever detention exceeds six months; or,

when the alien has "a substantial defense to removal"; or when the detention has

become "unreasonably prolonged."   The Government responds that such an alien may

become entitled to a bond hearing at which the Government bears the burden of proof if

the detention becomes "indefinite."   The Government maintains, though, that

Petitioner's detention is not indefinite.   Further, the Government contends that insofar

as Petitioner is claiming that it violated his Due Process rights to have to bear the

burden at the bond hearing, that argument is unexhausted since Petitioner never

appealed the IJ's custody ruling.

As a preliminary matter, the Court agrees that any claim arising from the bond

hearing conducted January 14, 2019 is unexhausted.[86]   Moreover, as already

---

[86] "A habeas petitioner must normally exhaust administrative remedies before seeking federal court intervention." *Michalski v. Decker*, 279 F. Supp.3d 487, 495 (S.D.N.Y. 2018) (citations omitted). While Section 2241 does not include a statutory exhaustion requirement, courts have generally required exhaustion as a " 'prudential matter.' " *Michalski*, 279 F. Supp.3d at 495 (quoting *Paz Nativi v. Shanahan*, No. 16-CV-8496(JPO), 2017 WL 281751, at *1 (S.D.N.Y. Jan. 23, 2017) (citing *Araujo–Cortes v. Shanahan*, 35 F. Supp.3d 533, 538 (S.D.N.Y. 2014)); *Howell v. INS*, 72 F.3d 288, 291 (2d Cir. 1995) ("Under the doctrine of exhaustion of administrative remedies, 'a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself.' ") (quoting *Guitard v. U.S. Sec'y of Navy*, 967 F.2d 737, 740 (2d Cir. 1992))).   Although, "if an exhaustion requirement is judicially imposed instead of statutorily imposed, a number of exceptions apply that allow courts to excuse a party's failure to exhaust administrative remedies[:] ... (1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003), as amended (July 24, 2003) (quotation omitted).

explained Petitioner spent the entire Petition (ECF No. 1) claiming that he had never received a bond hearing, when in fact he had.   Consequently, any purported claim involving the procedures employed at the original hearing is raised for the first time in the Reply, and need not be considered.[87]   The issue before the Court is whether Petitioner now has a procedural due process right to *another* hearing.

The Court answers this question in the negative, since it finds that Petitioner's detention is not unreasonably prolonged.[88]   The applicable law on this point has been summarized as follows:

> "Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *Plyler v. Doe*, 457 U.S. 202, 210 (1982); see also Mezei, 345 U.S. at 212 ("It is true that aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."). At the same time, Congress has "broad power over naturalization and immigration, [permitting it to] make[ ] rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting Mathews v. Diaz, 426 U.S. 67, 79-80 (1976)). The Due Process Clause is not offended by the mandatory detention of aliens for the "brief period necessary for their removal proceedings," *id*. at 513 (emphasis added), but a detained alien "could be entitled to an individualized determination as to his risk of flight and dangerousness if

---

[87] *See, e.g., Pineda v. Shanahan*, 258 F. Supp. 3d 372, 380, n. 11 (S.D.N.Y. 2017) ("To the extent that the petitioner intended to challenge the constitutionality of the October 17, 2016 decision by the Acting Field Office Director from Immigration and Customs Enforcement to continue detention, he has waived that argument by raising it for the first time in his reply brief.").

[88] The parties seem to agree that the existence of a procedural due process violation in this case turns, in the first instance, on whether Petitioner's detention has become unreasonably prolonged.

the continued detention bec[omes] unreasonable or unjustified." *id.* at 532
(Kennedy, J., concurring).

For that reason, this Court "has evaluated procedural due process
challenges to immigration detention with a two-step inquiry." *Hemans v.
Searls*, 2019 WL 955353, at *5 (W.D.N.Y. Feb. 27, 2019). "As the first
step, the Court considers whether the alien's detention has been
unreasonably prolonged." *Id.* "If it has not, then there is no procedural due
process violation." *Id.* "But if it has, the Court proceeds to step two and
'identifies the specific dictates of due process.'" *Id.* (quoting *Mathews v.
Eldridge*, 424 U.S. 319, 335 (1976)). If the government has not provided
the procedural safeguards required by the Due Process Clause to an alien
subject to unreasonably prolonged detention, "then his continued
detention violates procedural due process." *Id.*

*Rasel v. Barr*, No. 19-CV-458, 2019 WL 4257408, at *3 (W.D.N.Y. Sept. 9, 2019).

"When weighing the lawfulness of continued detention of a noncitizen under the

Due Process Clause, several factors determine whether the detention is unreasonably

prolonged.   [Courts,] for example, ha[ve] considered (1) the total length of detention to

date; (2) the conditions of detention; (3) delays in the removal proceedings caused by

the parties; and (4) the likelihood that the removal proceedings will result in a final order

of removal." *Rasel v. Barr*, No. 19-CV-1603, 2020 WL 1905243, at *5 (W.D.N.Y. Apr.

17, 2020) (citations and internal quotation marks omitted).

Applying these factors, the Court finds at the outset that the second and fourth

factors do not weigh in favor of finding unreasonable delay.   In this regard, Petitioner

has made little if any showing concerning either the conditions of his detention or the

likelihood that his removal proceedings will result in a final order of removal.   Petitioner

29

has made bald assertions that he is actually innocent of the crimes for which he was convicted, but as already mentioned that statement is strongly belied by the record, and Petitioner's state court appeal is primarily focused not on whether he is actually innocent, but on whether he was properly advised of the potential immigration consequences of his guilty plea.   In sum, it appears that if Petitioner's appeal succeeds it will not be for the reason that he has proffered to this Court.   More importantly, Petitioner concedes that he is removable for another reason, namely, that he is in the USA illegally after having overstayed his visa.   Indeed, a removal order has now been issued on that basis.   Against that, Petitioner makes only vague references to the fact that he is pursuing withholding or cancellation of removal, but has not shown that he is likely to avoid removal.   Accordingly, in the absence of any showing to the contrary, it seems likely that removal proceedings will result in a final order of removal.

Turning to the first factor --the length of the detention-- the Court notes that Petitioner has been detained now slightly more than two years, since May 2018. Obviously, this is a considerable amount of time.   Nevertheless, in light the Court's discussion below concerning the reason for this delay, the Court cannot say that this period of delay is indicative of unreasonable conduct on the Government's part.

With regard to the third and final factor --delays in the removal proceedings caused by the parties-- the Court finds that to the extent that there have been unusual delays in Petitioner's removal proceedings, Petitioner is at fault.

On this point, the Court notes that when it initially reviewed the record it was

30

concerned that the Government may have unreasonably delayed the proceedings by pursuing expedited removal on the basis of Petitioner's felony convictions, even though the convictions were not final for immigration purposes. Accordingly, the Court had the parties make additional submissions addressing what they knew about Petitioner's criminal appeal and when they knew it.

Now, as supplemented, the record indicates the following chronology: Petitioner initially did not file a timely appeal of his convictions.   Thereafter, toward the end of his prison sentence, Petitioner applied for permission to file a late appeal.   On May 15, 2018, the New York State Supreme Court, Appellate Division First Department granted Petitioner leave to file a late appeal.   Significantly, though, Petitioner did not actually file the appeal until almost a year later.   In the meantime, DHS checked to see whether Petitioner had appealed his convictions and found that he had not.   Further, Petitioner himself did not learn that his request to file a late appeal had been granted until mid- to late-November 2018.   Upon learning of that fact, Petitioner notified DHS that he had been granted leave to file a late appeal, but did not indicate the proposed basis for the appeal.   DHS, for its part, and relying on relevant administrative caselaw, concluded that while Petitioner may have been granted leave to file a late appeal, he had not shown that his convictions were anything other than final. *See, Matter of Acosta*, 27 I. & N. Dec. 420, 432 (BIA 2018) ("[O]nce the DHS has established that a respondent has a criminal conviction at the trial level and that the time for filing a direct appeal has passed, a presumption arises that the conviction is final for immigration purposes.   *To*

*rebut that presumption, a respondent must come forward with evidence* that an appeal has been filed within the prescribed deadline, including any extensions or permissive filings granted by the appellate court.   He or she must also present evidence that the appeal relates to the issue of guilt or innocence or concerns a substantive defect in the criminal proceedings.") (citations and footnote omitted).

Thereafter, an IJ concluded that the convictions were not final for immigration purposes, though the basis for that finding is not explained.   In response, DHS elected not to appeal and to instead initiate a new removal proceeding based in part on Petitioner's overstay of his visa.   DHS also included the felony convictions in the new Notice to Appear, but there is no indication that the inclusions of those grounds caused any delay in the proceedings, and ultimately an IJ issued a removal order based solely on Petitioner's visa overstay.   Petitioner remains detained while he appeals the removal order and/or seeks relief from removal.

Considering all these facts, the Court finds the delay occasioned by the Government's aborted pursuit of expedited removal, amounting to approximately one year, is attributable to Petitioner.   Once the time to file an appeal from Petitioner's convictions expired, which would have been in 2017, a presumption arose that the convictions were final for immigration purposes, and the burden was on Petitioner to overcome that presumption.   Petitioner was in the best position to know the status and grounds of his criminal appeal.   Since Petitioner himself was unaware throughout most of 2018 that he had been granted permission to file a late appeal, he can hardly fault the

Government for being similarly unaware.   Moreover, even after Petitioner notified DHS that he had been granted permission to file a late appeal, he did not provide additional information about the nature of the appeal until several months later.

The Government reasonably relied on the information that it had, which indicated that the convictions were final.   Once the IJ ruled that the convictions were not final, the Government did not drag matters out by appealing, but, instead, cancelled the removal order and promptly reinstituted removal proceedings on the basis of Petitioner's visa overstay.

Based on the foregoing, the Court finds, on the particular and unusual facts of this case,[89]  that Petitioner has not shown that his continued detention has become "unreasonably prolonged" in a constitutional sense.   Accordingly, the Court denies Petitioner's procedural due process claim.

## CONCLUSION

The Petition is denied, and this action is dismissed.   The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).   Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate

---

[89]  In which, for example, the Government's attempt to use an expedited process to complete removal proceedings resulted instead in a delay.

Procedure.   The Clerk of the Court is directed to close this action.

So Ordered.

Dated:        Rochester, New York
              June 11, 2020

ENTER:

CHARLES J. SIRAGUSA
United States District Judge